**TRAILER MARINE TRANSPORT
CORP., Plaintiff,**

**v.**

**Hermenegildo ORTIZ, et al.,
Defendants.**

**Civ. No. 90–1373 (JP).**

United States District Court,
D. Puerto Rico.

March 22, 1990.

---

491

Nicolás Jiménez, Jiménez, Graffam & Lausell, San Juan, P.R., for plaintiff.

Carlos Del Valle, Ramírez & Ramírez, Hato Rey, P.R., and Yolanda Benítez, Dept. of Justice, San Juan, P.R., for defendants.

**492**

## OPINION AND ORDER

PIERAS, District Judge.

On March 14, 1990, plaintiff, Trailer Marine Transport Corporation, filed this action and requested a Temporary Restraining Order ("TRO") against the defendants, the Secretary of Transportation, the Secretary of Treasury of Puerto Rico, and the Automobile Accident Compensation Administration ("AACA"), in order to enjoin the imposition of a tax imposed pursuant to Law No. 27 of December 12, 1989. In essence, plaintiff alleges that Law No. 27 as applied to it, violates Article 1, Section 8 of the United States Constitution—specifically, that Law No. 27 violates the Dormant Interstate Commerce Clause. Plaintiff sustains that the application of Law No. 27 creates an undue burden on interstate commerce.

Plaintiff also requests injunctive relief as to Law No. 26 of December 12, 1989, alleging that such statute is also unconstitutional.

■ On March 20, 1990, a hearing was held and all parties were represented by counsel. The defendants argued against the issuance of the TRO. The Secretary of the Treasury did not present evidence at this hearing and merely rested on its contention that this Court lacked subject matter jurisdiction. The AACA Administrator, who argued extensively and cross-examined plaintiff's witnesses, did not present any evidence. Because the instant proceeding concerned the determination of whether to issue the TRO, the parties were not required to present witnesses or evidence and could rely on their allegations and sworn statements. See Rule 65(b) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

Plaintiff is a common carrier engaged in the transportation of goods by sea between various ports of the continental United States, Puerto Rico, and foreign nations. Plaintiff's method of transportation includes the carriage of cargo in containers which are already coupled to a chassis on wheels and depends on trucks for movement. Such trailers are rolled on and rolled off a barge by a tractor. The barge is not self-propelled and is towed by an ocean-going tugboat. Through this method, the containers coupled to the chassis are placed on the barge as though the barge was a floating parking lot.

Michael Hopkins, plaintiff's Director of Operations in Puerto Rico, testified that once the cargo is delivered to its destination point in Puerto Rico, the empty trailer returns to the terminal for its return voyage to the mainland United States or elsewhere. Following the delivery of cargo, these trailers may stay in Puerto Rico from anywhere between a few hours to several days. None of plaintiff's trailers ever become permanently located in Puerto Rico.

Plaintiff contends that its competitors, which are also engaged in the transportation of goods by sea, use containers which are not coupled to a chassis. According to plaintiff, the competitors' vessels utilize a lift-on/lift-off system. This system provides that once the containers arrive in Puerto Rico, a large crane is used to lift the containers off the vessel and place them on a chassis, which is permanently based in Puerto Rico. Through this lift-on/lift-off system, the chassis with wheels is never loaded on the vessel. Therefore, the containers can be stacked on top of each other for their ocean voyage.

Plaintiff testified that it has approximately one-third of the market share in the transportation of goods by sea business in Puerto Rico. Plaintiff's largest competitor is Navieras de Puerto Rico, which is a public corporation wholly owned by the Government of Puerto Rico. Plaintiff further testified that Navieras also utilizes plaintiff's roll-on roll-off method. However, Navieras' use of this system is very limited.

Plaintiff alleges that Law No. 27 is unconstitutional as applied to its operations. Under Law No. 27, the plaintiff is required to pay a registration fee of five dollars ($5.00) for each entry into Puerto Rico of a trailer up to a maximum of sixty-five dollars ($65.00). This fee authorizes the trailer to travel on the roads of Puerto Rico up

to thirty (30) days. If the trailer remains in Puerto Rico over thirty days, the Government imposes the regular sixty-five dollar registration fee, which is valid for one year and during that year it can come in and go out of Puerto Rico without triggering the $5.00 fee again.

Plaintiff further alleges that Law No. 26 of December 12, 1989, is also unconstitutional. Plaintiff contends that this law violates Article I Section 8 of the Constitution and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Under this law, plaintiff is required to pay AACA an annual $35.00 insurance premium per trailer or pay a special premium fee of $15.00 in lieu of the regular fee of $35.00 per each re-entry in Puerto Rico if the trailer will remain in Puerto Rico for less than thirty days.

During the last three years, the plaintiff as well as its parent company had been losing millions of dollars in its operations. The payments, which are required under the challenged statute, will eventually cause plaintiff additional losses unless it changes its method of operation. Plaintiff's competitors use a method of operation different from that of plaintiff. Their trucks and trailers are permanently located in Puerto Rico, therefore they only have to pay the $65.00 license tax and the $35.00 insurance premium to AACA once a year per trailer. The plaintiff has 101,400 trailers that enter Puerto Rico each year. Therefore, the plaintiff would be subject to a $5.00 registration fee and a $15.00 insurance premium per entry to AACA. Of these, fifty percent come in enough times to pay the $65.00 and $35.00 taxes and premiums respectively without obligation of further payment during the year, regardless of the times they come into Puerto Rico.

## II. JURISDICTION

The main issue in the instant case is whether this Court has subject matter jurisdiction to entertain plaintiff's request for a TRO. This issue of jurisdiction is determined by an interpretation of the Butler Act, 48 U.S.C. § 872, as well as the Tax Injunction Act, 28 U.S.C. § 1341.

The Butler Act provides that no suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico. In *Carrier Corp. v. Pérez*, 677 F.2d 162 (1st Cir.1982), the Court of Appeals for the First Circuit, held that the provisions of the Butler Act are to be construed in conjunction with the provisions of the Tax Injunction Act. The Tax Injunction Act forbids the district courts from enjoining, suspending or restraining the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of each state. The First Circuit in *Carrier* therefore concluded that the "plain, speedy, and efficient remedies" provision of the Tax Injunction Act is also applicable to the Butler Act.

Plaintiff has requested this Court to enjoin a state tax which requires the payment of a "registration fee" for every trailer temporarily introduced into Puerto Rico because such mandatory fee or tax, when applied to plaintiff, forces it to pay more tax than the other corporations which provide similar services as the plaintiff. Therefore, plaintiff sustains that Law No. 27 violates the Commerce Clause. U.S. Const. Art. I § 8.

This Court finds that under the circumstances of this case, it lacks subject matter jurisdiction because of the express prohibitions of the Butler Act and the Tax Injunction Act. The plaintiff has a plain, speedy and efficient remedy under Puerto Rico law. First, the tax can be challenged before the Secretary of the Treasury. Plaintiffs can seek further judicial review from the Secretary's decision before the Superior Court of Puerto Rico. *See* 13 L.P.R.A. § 261; *Carrier*, 677 F.2d at 174 (upholding Puerto Rico's refund procedure as a plain, speedy and efficient remedy).

This Court is mindful of its decision in *Venrod Corporation v. Secretary of the Treasury of the Commonwealth of Puerto Rico*, 704 F.Supp. 21 (D.P.R.1989), but

finds that case distinguishable from this case. In *Venrod* we found that the procedure under Puerto Rico law for the challenging the state tax was not "plain, speedy and efficient." The plaintiff in *Venrod* alleged that the defendant had violated its procedural due process rights when it revoked without a hearing a permit which permitted an excise tax on the sale of a sub-standard wine and increased the tax to be paid after the plaintiff had committed itself to purchase thirty thousand cases of the wine. The procedure available to plaintiff for challenging the tax required the plaintiff to suffer the economic burden of the tax. The Court concluded that this procedure placed the plaintiff in a "catch-22" situation: it could either pass the burden of the tax on the ultimate purchaser, which would have made the wine uncompetitive, and therefore it would have given up any remedy for an allegedly illegal tax, or it could have absorbed the tax, sold the wine at a loss, and attempted to obtain a refund. *Venrod*, 704 F.Supp. at 24. Due to the specific factual circumstances present in the *Venrod* case, we issued a TRO compelling the Secretary of the Treasury to *enforce* the first tax rate that was assessed against Venrod along with Venrod's permit, which was later revoked without due process by the issuing agency. The case was decided in view of the mixed legal question in failing to grant plaintiff due process of law because of the unilateral revocation of the permit together with the lack of an adequate remedy at law.

Plaintiff requests the invalidation of Law 27 because it is a violation of the Commerce Clause. Plaintiff essentially asks this Court to enjoin the imposition of the state tax rather than enforce a previously levied tax as in the *Venrod* case. Therefore, because in this case a plain, speedy and efficient remedy is available in the courts of Puerto Rico, and no question of due process is invoked, we cannot assume jurisdiction to entertain plaintiff's request. *See Carrier*, 677 F.2d at 167; 13 L.P.R.A. § 261.

█ In relation to plaintiff's request for injunctive relief as to Law No. 26 (AACA legislation), the Butler Act and the Tax Injunction Act are not applicable, because Law No. 26 mandates payment of *insurance premiums*, not taxes. However, a court will generally decline to grant injunctive relief unless the plaintiff shows that it does not have an adequate remedy at law. 11 Wright & Miller, *Federal Practice and Procedure:* Civil § 2944. Furthermore, in order to challenge a state action in federal court a litigant must normally exhaust its "administrative remedies." 17 Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction § 4233, at 371. However, the plaintiff need not normally exhaust state "judicial" remedies. *Id.*, at 371–372.

Law No. 26 of December 12, 1989, amends Section 16 of Law No. 138 of June 26, 1968 (the Automobile Accident Social Protection Act) to require the payment of the previously mentioned insurance premiums. *See* 9 L.P.R.A. §§ 2051–2065. The statute and the corresponding administrative regulation do not provide for an administrative remedy to challenge such insurance premiums.

█ Therefore, we must now decide whether plaintiff has met the criteria for the issuance of a TRO. The four criteria are:

1. the likelihood of success on the merits;
2. the potential for irreparable injury;
3. a balancing of the hardships;
4. the effect on the public interest.

*Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 892–893 (1st Cir.1988).

A. *Likelihood of Success*

█ Plaintiff has not presented evidence sufficient to convince the Court that it is likely to prevail on the merits. Plaintiff is challenging the constitutionality of the Automobile Accident Social Protection Act, a social legislation which created a compulsory system for the compensation of automobile accident victims. This system operates on the basis of no-fault insurance. *See e.g., A.A.C.A. v. Yantin*, 103 D.P.R. 59, 64 (1974) (discussing social need of AACA's system of no-fault insurance). Therefore,

as a matter of federal law, the defendants need demonstrate only a rational basis for Law No. 26 in order to defeat plaintiff's equal protection challenge. *See Hodel v. Indiana*, 452 U.S. 314, 331, 101 S.Ct. 2376, 2387, 69 L.Ed.2d 40 (1981) ("Social and economic legislation that does not employ suspect classifications or impinge on fundamental rights must be upheld … when the legislative means are rationally related to a legitimate government purpose."); *Montalvo–Huertas v. Rivera–Cruz*, 885 F.2d 971, 977 (1st Cir.1989). In the instant case the insurance premiums required by the AACA legislation are uniform. This legislation is reasonable and practical and has a rational basis.

Plaintiff also alleges that Law No. 26 violates the Dormant Interstate Commerce Clause. *See Complete Auto Transit Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). This District has held that the Interstate Commerce Clause, in its dormant state, fully governs the trade relations between Puerto Rico and the United States. *See Garcia v. Bauzá Salas*, 686 F.Supp. 965, 972, *rev'd on other grounds*, 862 F.2d 905 (1st Cir.1988); *Sea Land Services, Inc. v. Municipality of San Juan*, 505 F.Supp. 533 (D.P.R.1980).

In light of the extensive body of Supreme Court case law relating to the Dormant Interstate Commerce Clause, the following rule can be stated:

> State regulation affecting interstate commerce will be upheld if (a) the regulation is rationally related to a legitimate state end, and (b) the regulatory burden imposed on interstate commerce, and any discrimination against it, are outweighed by the state interest in enforcing the regulation.

Tribe, *American Constitutional Law*, § 6–5 (2nd ed. 1988).

### B. *Irreparable Injury*

As irreparable injury, plaintiff alleged at the hearing that Law No. 26's financial impact on its operations was considerable. Furthermore, plaintiff testified that due to the competitiveness of the market, it would likely lose its share in the Puerto Rico market. The plaintiff is capable of accommodating its operations in order to avoid the impact of multiple entries and thereby comply with the challenged statutes. At present, before the imposition of AACA's fee, the plaintiff was losing a substantial amount of money covering the last three years.

### C. *Balancing of the Equities and the Public Interest*

Both these factors require careful attention. Plaintiff may suffer economic harm as a result of Law No. 26's application, however the public safety relating to the automobile accident social protection is a more weighty equity.

### D. *Public Interest*

The public interest requires the protection of all those involved in automobile accidents in the roads and highways of Puerto Rico. Plaintiff's vehicles utilize such roads and highways in conducting its business. If this Court were to enjoin AACA from collecting its premiums, this would invariably affect its ability to compensate the injuries of victims involved in automobile accidents.

Therefore, in view of the foregoing plaintiff's request for injunctive relief against the Secretary of Transportation and Secretary of Treasury is DISMISSED with prejudice as this Court lacks subject matter jurisdiction. The Court hereby DENIES plaintiff's request for a TRO against Carmen M. Rivera Vázquez and the AACA.

IT IS SO ORDERED.